UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | | |
|---|---|---|
| SANDRA S., | ) | |
| | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 3:20-cv-00056-RLY-MPB |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION ON
APPROPRIATE DISPOSITION OF THE ACTION**

This matter was referred to the Magistrate Judge under 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b) for a Report and Recommendation as to its appropriate disposition. (Docket No. 10). Plaintiff Sandra S.[1] seeks judicial review of the Social Security Administration's final decision deeming her ineligible for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The matter is fully briefed. (Docket No. 14; Docket No. 19; Docket No. 20). It is recommended that the District Judge **REMAND** the decision of the Commissioner of the Social Security Administration finding that Plaintiff Sandra is not disabled, pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration, consistent with this opinion.

**I.   PROCEDURAL BACKGROUND**

On May 22, 20217, Sandra filed an application for DIB under Title II and SSI under Title XVI of the Social Security Act, alleging disability beginning September 15, 2016. (Docket No.

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and the Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

12-3 at ECF pp. 21, 25). Her application was denied initially and upon reconsideration. (Docket No. 12-2 at ECF pp. 108, 112, 121, 128). On January 9, 2019, Administrative Law Judge, Jeffrey L. Eastham, conducted a hearing at which Sandra, her counsel, and an impartial vocational expert appeared and testified. (Docket No. 12-2 at ECF pp. 30-70). On March 4, 2019, the ALJ issued a decision finding that Sandra was not disabled. (Docket No. 12-2 at ECF pp. 15-24). In January 2020, the Appeals Council denied Sandra's request for review, thereby rendering the ALJ's decision the agency's final decision for purposes of judicial review. (Docket No. 12-2 at ECF pp. 1-5). On March 9, 2020, Sandra timely filed this civil action, asking the court pursuant to 42 U.S.C. § 405(g) to review the final decision of the Commissioner denying her benefits. (Docket No. 1 at ECF p. 1). Jurisdiction is proper according to 42 U.S.C. § 1383(c).

Sandra contends that, essentially, the ALJ's decision is riddled with error. She alleges four separate reversible errors, which she claims manifests from two critical defects in the ALJ's decision: cherry-picked evidence and failure to provide an accurate and logical bridge supporting the ALJ's conclusions and assertions. These arguments include err at: (1) step two by not properly considering all of the relevant conditions or their combined effect; (2) at step three in (a) his "B Criteria" assessment, an error which (b) flowed into the residual functional capacity (RFC), and (c) failing to properly consider whether Sandra's conditions, individually or in combination, medically equal a listing; (3) at the RFC; and (4) at Step 4 in finding Sandra capable of her past relevant work.

## II.  STANDARD FOR PROVING DISABILITY

Under the Social Security Act, a claimant may be entitled to benefits only after she establishes that she is disabled. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work but any other kind of gainful employment which exists in the national economy, considering her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

The Commissioner employs a five-step sequential analysis to determine whether a claimant is disabled. At step one, if the claimant is engaged in substantial gainful activity, she is not disabled despite her medical condition and other factors. 20 C.F.R. § 404.1520(a)(4)(i). At step two, if the claimant does not have a "severe" impairment that also meets the durational requirement, she is not disabled. 20 C.F.R. § 404.1520(a)(4)(ii). A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. § Part 404, Subpart P, Appendix 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant's impairments do not meet or medically equal one of the impairments in the Listing of Impairments, then her residual functional capacity will be assessed and used for the fourth and fifth steps. *See* 20 C.F.R. § 404.1520(a)(4)(iv)-(v). Residual functional capacity ("RFC") is the "maximum that a claimant can still do despite [her] mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(1); Social Security Ruling ("SSR") 96-8p). At step four, if the claimant is able to

perform her past relevant work, she is not disabled. 20 C.F.R. § 404.1620(a)(4)(iv). At the fifth and final step, it must be determined whether the claimant can perform any other work, given her RFC and considering her age, education, and past work experience. 20 C.F.R. § 404.1520(a)(4)(v). The claimant is not disabled if she can perform any other work in the relevant economy. *Id.*

The combined effect of all the impairments of the claimant shall be considered throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). The burden of proof is on the claimant for the first four steps; it then shifts to the Commissioner for the fifth step. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992).

### III. STANDARD OF REVIEW OF THE ALJ'S DECISION

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). The standard demands more than a scintilla of evidentiary support, but it does not demand a preponderance of the evidence. *Wood v. Thompson*, 246 F.3d 1026, 1029 (7th Cir. 2001).

The ALJ is required to articulate a minimal, but legitimate, justification for his decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). The ALJ need not address every piece of evidence in his decision, but he cannot ignore a line of evidence that undermines the conclusions he has made, and he must trace the path of his reasoning and connect the evidence to his findings and conclusions. *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012).

4

## IV. FACTUAL BACKGROUND

The ALJ followed the five-step sequential evaluation set forth by the SSA in 20 C.F.R. § 404.1520(a) and ultimately concluded that Sandra was not disabled. (Docket No. 12-2 at ECF p. 24). At step one, the ALJ found that Sandra met the insured status requirements through December 31, 2021 and had not engaged in substantial gainful activity[2] since September 15, 2016, the alleged onset date. (Docket No. 12-2 at ECF p. 17). At step two, the ALJ found that Sandra had the following "severe impairments: obesity, depression, and anxiety disorder." (Docket No. 12-2 at ECF p. 18). The ALJ also noted the record showed "other impairments including disorder of the spine," but found those other "medically determinable impairments" were not severe. (*Id.*). No other impairments were specifically discussed at step two. At step three, the ALJ found that Sandra did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (Docket No. 12-2 at ECF p. 18). As to the "paragraph B" criteria, the ALJ found that Sandra had moderate limitations in three areas—understanding, remembering, or applying information; interacting with others; and concentrating, persisting, or maintaining pace—had no limitation in the fourth area—adapting or managing oneself. (Docket No. 12-2 at ECF pp. 18-19). After step three but before step four, the ALJ concluded:

> After careful consideration of the entire record, the undersigned finds that the claimant as the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except the claimant can occasionally climb ladders, ropes, and scaffolds and can frequently crouch and occasionally crawl. She can perform simple goal oriented tasks and can understand and follow simple instructions. The claimant can make simple work related

---

[2] Substantial gainful activity is defined as work activity that is both substantial (i.e., involves significant physical or mental activities) and gainful (i.e., work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572.

5

> decisions and can tolerate frequent contact with co-workers, supervisors, and the public.

(Docket No. 12-2 at ECF p. 20). At step four, the ALJ found that Sandra was capable of performing past relevant work as a janitor and fast food worker. (Docket No. 12-2 at ECF p. 22). The ALJ made an alternative finding at step five, considering Sandra's age, education, work experience, and RFC, as well as the VE's testimony, to conclude that Sandra could have performed other work through the date of the decision with jobs existing in significant numbers in the national economy. (Docket No. 12-2 at ECF p. 23).

## V.  DISCUSSION

Sandra makes numerous assertions of error. The Court does not reach all of them because it finds that some of them are well-taken and, on their own, require reversal and remand.

1. **If the claimant has at least one severe impairment, there is no error at step two of the sequential analysis.**

Sandra argues that while the ALJ concluded she had some severe impairments, the ALJ failed to consider other conditions, such as her ankle and foot injury and edema, and by improperly dismissing her "disorder of the spine." (Docket No. 14 at ECF p. 18). The decision further fails, she continues, to address and discuss whether either of those conditions, when viewed in combination with Plaintiff's disorder of the spine and obesity were severe. The Commissioner responds that because the ALJ in this case proceeded through all five steps of the sequential evaluation process, Sandra cannot base any argument for reversible error on the ALJ's failure to find her spinal disorders, foot and ankle injury, or edema severe at step two. (Docket No. 19 at ECF p. 6). Further, the treatment notes that Sandra refers to do not show reversible error. Sandra replies that the step two error was not harmless because the ALJ entirely failed to consider the evidence at step two and in crafting the RFC. (Docket No. 20 at ECF p. 5). She

6

argues that the evidence showed she suffered from ankle and foot joint pain and edema since at least 2013, and that these impairments continued through March 2017, limiting her abilities to walking only short distances and difficulty standing. (*Id.*).

The step two analysis asks whether the claimant has any severe, medically determinable impairment. If the claimant has none, then she is not entitled to benefits and the analysis of disability ends, but if the claimant has at least one severe, medically determinable impairment, then the sequential analysis continues to determine whether there is a presumptive disability at step three and, if not, whether the claimant is capable of working despite the effects on work capacity of all severe and non-severe impairments. Thus, if an ALJ determines there exists at least one severe impairment, there is no legal error at step two. *Curvin v. Colvin*, 778 F.3d 645, 649 (7th Cir. 2015) (a favorable disability ruling can be made only at step three or at step five, and there can be no legal error at step two where the ALJ makes "a favorable a determination as can be made" at that step by finding that the claimant has at least one severe impairment based on the objective medical evidence). But an ALJ's failure to address impairments at step two can prelude errors beyond step two because the ALJ may then fail to address whether the impairments she found were not severe or impairments she may have not addressed at all cause limitations in work capacity for purposes of formulating an RFC, and then deciding whether the claimant can work. *See id.* at 649-50 (any failure to address all impairments at step two "does not matter" where the ALJ elsewhere in her decision properly considers all severe and non-severe impairments, the objective medical evidence, the claimant's symptoms and her credibility in determining her capacity to work).

*Arnett v. Astrue*, 676 F.3d 586 (7th Cir. 2012) is further instructive on this point. In *Arnett*, the ALJ found both severe and non-severe impairments at step two, but did not mention

7

her other physical and mental impairments. *Id.* at 590. Like here, at appeal the claimant took issue with nearly every step of the ALJ's analysis, including arguing that the ALJ failed to evaluate all of her medically determinable impairments at step two, which inevitably flawed the ALJ's RFC determination. *Id.* at 591. The Seventh Circuit summarized:

> All three of Arnett's other claims assert, in one way or the other, that the ALJ failed to consider the impact of all of her impairments taken together. Her arguments about Step 2 and Step 5 boil down to a contention that the ALJ overstated her RFC by making this mistake. But even if there were a mistake at Step 2, it does not matter. Deciding whether impairments are severe at Step 2 is a threshold issue only; an ALJ must continue on to the remaining steps of the evaluation process as long as there exists even *one* severe impairment. *Castile v. Astrue*, 617 F.3d 923, 927-28 (7th Cir. 2010). Here, the ALJ categorized to impairments as severe, and so any error of omission was harmless. *See id.*

*Id.*

## 2. The ALJ's step three decision is not supported by substantial evidence.

Next, Sandra argues that the ALJ erred because of errors in his "paragraph B criteria" determination and in his medical equivalence analysis. Because the Court agrees that the ALJ erred in his "paragraph B" analysis, it will limit its discussion to that issue. With regards to the "paragraph B criteria," Sandra asserts that the ALJ mischaracterized evidence or otherwise made conclusions that were not supported by the evidence in his discussion of her ability to understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage herself.

The Commissioner responds that Sandra asks this court to reconsider the facts related to the "paragraph B criteria" and reweigh the evidence. (Docket No. 19 at ECF p. 7). The ALJ adequately considered the evidence, including Ms. Conner's, a licensed clinical social worker (LCSW) opinions. (Docket No. 19 at ECF p. 8).

8

Step three asks an ALJ to consider whether an impairment, alone or in combination with other impairments, meets or medically equals a listed impairment, and is governed by Social Security Ruling ("SSR") 17-2p, (S.S.A. Mar. 27, 2017, 2017 WL 3928306, at *1). The ALJ's Step Three finding that Sandra did not meet or medically equal the requirements of Listing 12.04 and 12.06 was based on his determination that Sandra did not meet the "Paragraph B" or "Paragraph C" criteria of that Listing. Under Listing 12.04 and 12.06, a claimant must meet the "Paragraph A" criteria, and then also either the "Paragraph B" or "Paragraph C" criteria of that listing. 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.04, 12.06. The ALJ did not discuss whether Sandra presented sufficient evidence to meet the Paragraph A criteria, apparently assuming that she had.[3]

The Paragraph B criteria require the presence of at least two of the following for a claimant to be considered disabled: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked deficiencies of concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration. *Larson v. Astrue*, 615 F.3d 744, 748 (7th Cir. 2010). Thus, satisfaction of the Paragraph B criteria requires that Sandra's mental impairments cause at least two "marked" limitations, or one "marked" limitation and "repeated" episodes of decompensation. *See* 20 C.F.R. § 404.1520a(c)(4) (rating the degree of limitation in this functional area on a five-point scale: none, mild, moderate, marked, and extreme).

The ALJ's mistake was in drawing several conclusions that were contradicted by evidence he did not address. For instance, with regards to understanding, remembering, or applying information, to which the ALJ assigned moderate limitations, the ALJ relied on the

---

[3] The criteria in Paragraph A medically substantiate the presence of the mental disorder.

9

claimant's function report to conclude she did not allege difficulty remembering, understanding or following instructions (Docket No. 12-2 at ECF p. 18, citing Docket No. 12-3 at ECF pp. 69-76). Yet, the medical records showed reports that Sandra was frustrated with her poor memory, that Ms. Conner indicated that Sandra had a memory impairment and was easily distracted, and had difficulty thinking and concentrating, and that Owensboro Health Regional Hospital's intake from April 11, 2017, noted she had difficulty concentrating and impaired memory and anxiety. (Docket No. 12-6 at ECF p. 102; Docket No. 12-7 at ECF p. 5; Docket No. 12-5 at ECF p. 70; Docket No. 12-4 at ECF p. 119 ). Again relying on Sandra's functional statement the ALJ said that she "does not require special reminders to manage her personal care; however, she requires reminders to take her medications." (Docket No. 12-2 at ECF p. 18, citing Docket No. 12-3 at ECF pp. 69-76). But, Sandra's sister twice reported that Sandra had to be reminded to shower. (Docket No. 12-3 at ECF pp. 101, 109).

      Similarly, with regards to concentration, persistence, and pace, to which the ALJ also assigned moderate limitations, the ALJ stated that per the claimant's Function Report, she does not allege difficulty concentrating or completing tasks. (Docket No. 12-2 at ECF p. 19, citing Docket No. 12-3 at ECF pp. 69-76). But, other unaddressed evidence contradicted this conclusion. Sandra previously reported not being able to focus long enough on things to get them done initially (Docket No. 12-6 at ECF p. 102) and her sister indicated that Sandra had an attention span of less than five minutes. (Docket No. 12-3 at ECF p. 58).

      And with regards to adapting or managing oneself, to which the ALJ assigned no limitations, the ALJ stated that the objective evidence showed "no problems with temper control" (Docket No. 12-2 at ECF p. 5), yet her sister's reports—which were not addressed by the ALJ in his decision—indicated that her sister has problems with her temper and gets upset easily.

10

(Docket No. 12-3 at ECF p. 58, 104). Furthermore, there was other evidence in the record that contradicted the ALJ's conclusion that Sandra had no limitations in adapting or managing oneself. For instance, Ms. Conner opined "[e]ven a minimal increase in mental demands or change in the environment would be predicted to cause [Sandra] to decompensate." (Docket No. 12-5 at ECF p. 72). Sandra's sister against stated that stress caused her sister to "flip out," cry and scream. (Docket No. 12-3 at ECF p. 59).

This evidence, including testimony from Sandra's sister, is competent and probative. 20 C.F.R. § 404.1529(a) & (c)(3); *Boiles v. Barnhart*, 395 F.3d 421, 424-26 (7th Cir. 2005) (ALJ improperly ignored claimant's cousin's testimony at Step Three); *Godbey v. Apfel*, 238 F.3d 803, 809-810 (7th Cir. 2000) (ALJ erred in not considering the testimony of claimant's sister as to the claimant's mental conditioning). The Court owes deference to the Commissioner's findings, but the Commissioner must articulate those findings in a meaningful way that renders them susceptible to review. Moreover, although the ALJ is not required to mention or articulate his evaluation of each piece of evidence in the record, *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009); he cannot only discuss evidence that supports his ultimate conclusion, while ignoring evidence to the contrary. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010).

In defending the ALJ's "Paragraph B" discussion, the Commissioner focuses primarily on the ALJ's evaluation of Ms. Conner's opinion (LCSW), who was Sandra's treating therapist. (Docket No. 19 at ECF p. 7-9). Ms. Conner opined, among other things, that Sandra was markedly limited in her activities of daily living and social functioning and extremely limited in concentration, persistence, and pace. (Docket No. 12-2 at ECF p. 22, citing Docket No. 12-5 at ECF p. 75). The ALJ found this opinion minimally persuasive because it was "not consistent

11

with the mild mental status exams during the period at issue and the claimant's daily range of activities." (Docket No. 12-2 at ECF p. 22).

The Commissioner incorrectly argues that Ms. Conner is not an acceptable medical source as defined by the regulations, and thus, the ALJ did not need to apply the regulatory factors to her opinion. For claims filed after March 27, 2017, though a provider must still be an acceptable medical source to provide an opinion about the existence of a medical impairment, all medical sources may provide medical opinions on other issues. The SSA will articulate its determination regarding the persuasiveness of all the medical opinions. The ALJ will consider the "persuasiveness" of all medical opinions (not only the acceptable medical source opinions) using the factors specified in the regulations. Supportability and consistency will be the most important factors, and usually the only factors the ALJ is required to articulate. *Compare* 20 C.F.R. § 404.1520c (applicable to claims filed on or after March 27, 2017) *with* 20 C.F.R. § 1527(c) (applicable to claims filed before March 27, 2017). *See also* 20 C.F.R. § 1520c(b)(2) (". . . We may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we articulate how we consider medical opinions . . . in your case record."). Regardless, finding Ms. Conner's *opinion* "minimally persuasive," would not permit the ALJ to ignore or discount the *evidence* within her records. Much of the evidence discussed above stems from either Sandra's statements within Ms. Conner's treatment records or Ms. Conner's objective observations.

Finally, much of the above-cited evidence came from Sandra's sister's Function Reports, submitted on September 1, 2016 (Docket No. 12-3 at ECF p. 99-106), July 7, 2017 (Docket No. 12-3 at ECF p. 53-60), and September 16, 2017 (Docket No. 12-3 at ECF p. 107-14). She also submitted a written statement on September 28, 2017. (Docket No. 12-3 at ECF p. 136). The

ALJ did not discuss any of this evidence. An ALJ is to consider all of the evidence presented, including evidence by nonmedical sources. 20 CFR § 404.1529(c)(3). However, an ALJ is " not required to articulate how [he] considered evidence from nonmedical sources using" 20 C.F.R. § 404.1520c.

The Commissioner argues that remand is not required for the ALJ to specifically discuss Sandra's sister's reports because they were duplicative of Sandra's own statements and the opinions of Ms. Conner. But, Ms. Conner's opinions were discounted because they were inconsistent with, in part, Sandra's daily range of activities. So, the Commissioner's argument that the sister's statements were redundant with Ms. Conner's opinion, which the ALJ discounted as being inconsistent with the record, is a bit perplexing.

In sum, the ALJ's finding at Step Three was improper because, in evaluating the Paragraph B criteria, the ALJ made several conclusions that were contradicted by evidence otherwise unaddressed in his decision. It may well be the case that the ALJ considered such evidence and properly discounted it, but his opinion leaves the Court with no way to tell. The ALJ's failure to provide any rationale for discounting this evidence is reversible error. Therefore, this matter is remanded for elaboration on the ALJ's analysis and reconsideration of his determination at Step Three. Because the "paragraph B" mental functional analysis is relied upon in the subsequent residual functional capacity assessment, the Court will not assess the remaining err arguments as these steps will necessarily be readdressed upon remand.

## VI. CONCLUSION

For all these reasons, the Magistrate Judge recommends the Court **REMAND** the ALJ's opinion pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration, consistent with this opinion. Any objections to the Magistrate Judge's Report and Recommendation shall be

filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1). Failure to file timely objections within fourteen days after service shall constitute waiver of subsequent review absent a showing of good cause for such failure.

**SO RECOMMENDED** the 2nd day of August, 2021.

*[signature]*

Matthew P. Brookman
United States Magistrate Judge
Southern District of Indiana

Served electronically on all ECF-registered counsel of record.